UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES DAHER, JR., <br><br> Plaintiff, <br><br> v. <br><br> MARK SEVIER, et al., <br><br> Defendants. | CAUSE NO. 3:13-CV-940-JD-MGG |

OPINION AND ORDER

James Daher, Jr., a prisoner without a lawyer, objects to Magistrate Judge Michael G. Gotsch's Report and Recommendation recommending that this case be dismissed without prejudice for failure to exhaust administrative remedies in accordance with 42 U.S.C. § 1997e(a). (ECF 231.) For the reasons stated below, Mr. Daher's objections are overruled.

I.      BACKGROUND

The procedural history of this long-running case is fully detailed in the Report and Recommendation and will not be repeated here, except as is relevant to understanding Mr. Daher's objections. In brief, Mr. Daher was granted leave to proceed against Mark Sevier, Laurie Johnson, and James Csenar (collectively, "Defendants") on a claim that they violated his First Amendment rights in September 2011 by changing his classification and transferring him to the segregation unit at Miami Correctional Facility ("MCF") in retaliation for grievances that he had filed. (ECF 12.) He was also granted leave to proceed on an Eighth Amendment claim related to the conditions of

confinement in the segregation unit, specifically, that he was denied soap, a toothbrush, toothpaste, showers, clean bedding, and clean clothing, and was subjected to excessive noise and cold during the approximately 30 days he was housed there. (*Id.*) Defendants moved for summary judgment on the ground that Mr. Daher had not exhausted his available administrative remedies before filing suit. (ECF 24.) This court determined that genuine issues of material fact necessitated a hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). (ECF 39.) An evidentiary hearing was conducted in October 2015, after which the Magistrate Judge[1] issued a report and recommendation recommending that the case be dismissed for lack of exhaustion. (ECF 78.) This court adopted that recommendation and dismissed the case. (ECF 80).

Mr. Daher appealed. (ECF 81.) The Seventh Circuit concluded that proper procedures had not been followed during the evidentiary hearing, and that Mr. Daher had been denied the opportunity to conduct discovery and present evidence showing that he did attempt to exhaust his administrative remedies. *Daher v. Sevier*, 724 F. App'x 461, 464-65 (7th Cir. 2018). The Circuit therefore reversed and remanded for a new *Pavey* hearing. *Id.* at 465. The court held that before the hearing, Mr. Daher should be permitted to conduct discovery "relevant to rebut the defendants' assertions on their exhaustion defense," but that this was not intended as "a free pass to conduct open-ended discovery and litigation." *Id.* The Circuit further held that at the new *Pavey* hearing, Mr. Daher should be given "a reasonable amount of time" to present evidence

---

[1] This case was previously assigned to Magistrate Judge Christopher A. Nuechterlein, who has since retired.

2

"limited to rebutting the defendants' evidence that he failed to exhaust the prison grievance system." *Id.*

On remand, the parties engaged in protracted discovery over the course of more than a year.[2] Among other things, Defendants produced more than 1,300 pages of documents in response to Mr. Daher's written discovery requests. (ECF 160; ECF 161; ECF 162; ECF 163; ECF 164; ECF 165; ECF 166; ECF 167; ECF 168.) The *Pavey* hearing was rescheduled several times to permit the parties additional time to complete discovery. (ECF 118; ECF 158; ECF 177; ECF 185; ECF 201.)

Ultimately, a hearing was held on October 23, 2019. (ECF 208, 232.) By agreement of the parties, the court took judicial notice of the transcript and exhibits from the 2015 *Pavey* hearing, with the exception of one exhibit (a later version of the grievance policy) that the parties agreed was not relevant. (ECF 232 at 4–5; ECF 102.) Mr. Daher was also permitted to submit additional exhibits. (ECF 232 at 8, 37, 40-41.) Defendants called Mr. Daher and Clair Barnes Beaver ("Ms. Beaver"), a former litigation supervisor at MCF, as witnesses. They did not recall two additional witnesses they had presented at the 2015 hearing—Angie Heishman, an administrative assistant, and Amanda Tobin, a counselor at Miami—but by agreement their prior testimony was admitted via the transcript. (ECF 232 at 28; ECF 102.) Mr. Daher called fellow inmate Michael Troutman as a witness,[3] and also testified on his own behalf. (*Id.* at 57-95.)

---

[2] During this period, Mr. Daher also moved for summary judgment in his favor, but his motion was denied after briefing. (ECF 115, 120, 123, 124, 126.)

[3] Mr. Troutman did not arrive at MCF until 2015, and so his testimony was limited to his experience with the grievance system four years after the events underlying this case. (ECF 232 at 60.)

3

The key issues at the hearing were: (1) whether Mr. Daher submitted a formal grievance on September 12, 2011, about the issues raised in his complaint; (2) whether this grievance was returned to him unfiled on November 7, 2011, as procedurally defective; (3) whether Mr. Daher resubmitted the grievance on November 9, 2011; and (4) if so, how the resubmitted grievance was handled by prison staff.

After hearing testimony and allowing the parties several months to submit post-trial briefs, the Magistrate Judge issued a Report and Recommendation addressing those issues. (ECF 230.) In doing so, the court made detailed finds of fact. Specifically, the court found that at all relevant times, MCF had a grievance policy in place, through which inmates could grieve a broad range of issues, including their living conditions, retaliation for use of the grievance process, and other actions of prison staff. (*Id.* at 5.) Copies of the policy were posted throughout the facility, including in the law library. (*Id.*) That policy required the completion of three steps: an attempt at informal resolution of the problem; the submission of a formal grievance; and the submission of an appeal. (*Id.*) A formal grievance had to be filed no later than 20 working days from the incident giving rise to the inmate's complaint. (*Id.* at 6.) Within two working days, the facility's Executive Assistant was required to either accept the grievance and log it into the system—called the offender grievance management or "OGRE" system— or return it to the inmate unfiled. (*Id.*) An accepted grievance had to be answered within 15 working days. If dissatisfied with the answer, the inmate was required to submit a formal appeal to the grievance manager within 10 days of receiving the grievance response. (*Id.* at 7.)

4

If the grievance was returned to the inmate unfiled, it had to be accompanied by a "Return of Grievance" form explaining why the grievance was rejected and what could be done to correct it.[4] (*Id.* at 6.) Under the grievance policy, it was the inmate's responsibility to make any necessary revisions and resubmit the grievance within five working days. (*Id.*) If the inmate did not receive either a receipt showing that his grievance had been accepted or a Return of Grievance form within seven working days of submitting the grievance, the policy required him to "immediately" notify the Executive Assistant so that the matter could be investigated. (*Id.*) If he received no response to his grievance within 25 working days, the policy permitted him to proceed with an appeal as if his grievance had been denied. (*Id.* at 7.) In such case, the time to appeal began on the 26th day and ended 10 working days later. (*Id.*)

Grievance records reflect that Mr. Daher used the grievance policy several times during his incarceration at MCF, both before and after the events giving rise to this lawsuit. (*Id.*) Specifically, those records show that between March 2006 and July 2017, he filed 13 formal grievances and six formal appeals about a variety of matters. (ECF 167-3 at 9-10.) Official grievance records also reflect that Mr. Daher did not file any formal grievance or appeal related to retaliation occurring in September 2011, or to substandard conditions in the segregation unit during September and October 2011. (ECF 230 at 7-9.)

---

[4] At that time, rejected grievances were not logged into the OGRE system and instead were maintained in hard copy form in Ms. Beaver's office. (ECF 230 at 7 n.7.)

Nevertheless, during the course of this litigation, Mr. Daher claimed that he had submitted a grievance regarding these matters on September 12, 2011. (*Id.* at 8.) He further claimed the grievance was returned to him unfiled on November 7, 2011, as procedurally defective. (*Id.* at 8.) He produced what he purported to be documentation supporting this claim, specifically, a Return of Grievance form dated November 7, 2011. Defendants argued that the Return of Grievance form he was relying on actually corresponded to a different grievance he filed during this period related to the poor quality of the toilet paper at the prison. Mr. Daher denied this allegation, going so far as to accuse Defendants of "egregious perjury and misrepresentation." (ECF 230 at 11 n.11.)

During the course of the second *Pavey* hearing, however, Mr. Daher acknowledged that the Return of Grievance form he had produced related to the toilet paper grievance rather than to a grievance about retaliation and substandard conditions in the segregation unit. (*Id.* at 9-10.) He surmised that he must have made "a mistake." (*Id.* at 10.) He nevertheless claimed that he did file a grievance in September 2011 that was somehow lost or destroyed by prison staff, and that when he received the Return of Grievance form, mistakenly believing that it corresponded to his grievance about retaliation and substandard conditions in the segregation unit, he resubmitted it on November 9, 2011, but never heard anything further. (*Id.* at 11.)

Based on the record evidence, as well as Mr. Daher's demeanor on the stand, the Magistrate Judge determined that his account was not credible. (*Id.* at 13.) Specifically, the court did not believe that he had filed a grievance in September 2011 regarding the

6

issues raised in this lawsuit, or that he had resubmitted the grievance in November 2011. (*Id.* at 13-14.) Instead, the Magistrate Judge found it "likely he created the mistreatment/retaliation grievance and its resubmission after-the-fact for use in this lawsuit in an attempt to avoid dismissal." (*Id.* at 15.) Furthermore, the Magistrate Judge concluded that even if one believed Mr. Daher's account, it was undisputed that he did not pursue an appeal after he allegedly received no response to his resubmitted grievance. (*Id.*) After hearing nothing for 25 days, the grievance policy permitted him to proceed with an appeal as if his grievance had been denied, but he admitted at the hearing that did not take this step. (*Id.* at 15-16.) Therefore, the Magistrate Judge concluded that dismissal under 42 U.S.C. § 1997e(a) was warranted.

II.  ANALYSIS

A Magistrate Judge's order is reviewed under Rule 72(a) of the Federal Rules of Civil Procedure. That Rule provides that within 14 days of a Report and Recommendation addressing a dispositive matter, "a party may serve and file specific written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b). The court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to," and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* The de novo determination required under Rule 72(b) "is not the same as a de novo hearing." *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). In other words, "[t]he district court is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations." *Id.* "[I]f following a review of the record

7

the district court is satisfied with the magistrate judge's findings and recommendations it may in its discretion treat those findings and recommendations as its own." *Id.*; *see also McIntosh v. Wexford Health Sources, Inc.*, 987 F.3d 662, 665 (7th Cir. 2021) (observing that "a district court adopting a magistrate judge's findings is not required to hold a new hearing").

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense that the defendant has the burden of proving. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The purpose of the exhaustion requirement is "to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

At the same time, inmates are only required to exhaust administrative remedies that are actually available. *Woodford*, 548 U.S. at 102. The availability of a remedy is not a matter of what appears on paper, but rather, whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus,

when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

This court has carefully reviewed the *Pavey* hearing transcript, the hearing exhibits and other record evidence, and Mr. Daher's objections, and finds no error in the Magistrate Judge's order. To the contrary, the order is well-reasoned and well-supported by the record. The record amply supports the Magistrate Judge's conclusion that there was a grievance policy in place that Mr. Daher could have utilized to grieve the issues he complains about in this lawsuit, but that he did not file a grievance or appeal related to those issues before filing suit. (Defs.' Hearing Ex. A; ECF 102 at 35, 39.) The court adopts the Magistrate Judge's detailed factual findings as its own.

Although Mr. Daher claimed that he did file a grievance in September 2011 pertaining to the matters raised in this case, and then submitted it a second time in early November 2011, the Magistrate Judge did not find his account credible. There were valid reasons for making this credibility determination. As is fully outlined in the Report and Recommendation, during the course of the evidentiary hearing, Mr. Daher abandoned his claim that he had documentation showing his September 2011 grievance had been returned to him unfiled. He now acknowledges that the documentation he was relying on instead pertained to a grievance about an unrelated issue. The record

9

reflects that Mr. Daher is intelligent and has a nuanced understanding of the exhaustion requirement gained from his litigation history. The record also reflects that he kept detailed, organized records of other prison grievances and correspondence with prison staff, and yet he had little documentation to back up his arguments in this case. The court agrees with the Magistrate Judge that it appears likely he simply used the Return of Grievance form from the other grievance to bolster his arguments in this lawsuit.

Notably, the Magistrate Judge found Mr. Daher's testimony lacking in credibility due in part to his demeanor on the stand. (ECF 230 at 13.) The court must consider that the Magistrate Judge had an opportunity to personally observe Mr. Daher's facial expressions and body language as he testified, whereas this court did not. *See Krishnapillai v. Holder*, 563 F.3d 606, 617 (7th Cir. 2009) (observing that trier-of-fact "is far better situated to assess the credibility of a witness" than a reviewing court); *see also Jackson v. United States*, 859 F.3d 495, 499 (7th Cir. 2017) (expressing "severe doubts about the constitutionality of the district judge's reassessment of credibility without seeing and hearing the witnesses himself"). The court has reviewed the complete hearing transcript and finds nothing erroneous about the Magistrate Judge's credibility determination.

In his objection, Mr. Daher argues that the Magistrate Judge was required to give "equal weight" to his evidence and failed to do so. (ECF 231 at 2.) It is not entirely clear what he means by this statement, other than that he finds it unfair that the Magistrate

Judge credited the Defendants' version of events over his.[5] However, there was nothing improper about the Magistrate Judge weighing the evidence and deciding whose account was more credible. In fact, that was the entire purpose of the *Pavey* hearing. *Pavey*, 544 F.3d at 740–41; *see also Palmer v. Fenoglio*, 510 F. App'x 476, 478 (7th Cir. 2013) (observing that "under *Pavey* district courts may resolve factual disputes relating to exhaustion" at evidentiary hearing).

Moreover, as the Magistrate Judge concluded, even if one were to accept Mr. Daher's testimony that he filed grievances in September 2011 and November 2011 that were somehow lost or mishandled by prison staff, it remains undisputed that he did not exhaust his available administrative remedies. After 25 days passed without any response, the grievance policy permitted him to proceed with an appeal as if his grievance had been denied. (Defs.' Hearing Ex. A at 24 ("If the offender receives no grievance response within 25 working days of the day he or she submitted the grievance, he or she may appeal as though the grievance had been denied.").) Mr. Daher fully admitted at the *Pavey* hearing that despite this provision, he never pursued an appeal. (ECF 232 at 88-89.)

In his objection, Mr. Daher cites to *Towns v. Holton*, 346 F. App'x 97 (7th Cir. 2009), and *Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006), which in his view stand for the proposition that "1997(e) does NOT require inmates to appeal from unresolved

---

[5] He complains that the Magistrate Judge used the word "purported" when referring to his September 2011 grievance, but the court finds nothing improper about the wording of the order. (ECF 231 at 8.) As this court reads the order, the Magistrate Judge merely meant to indicate that it was disputed whether Mr. Daher had filed this grievance, and that there was no official record of the grievance in prison records. (*See* ECF 230 at 8.)

grievances." (ECF 231 at 13.) However, those cases were applying the Illinois Administrative Code, not the grievance policy in place at MCF. In *Towns*, the court observed that defendants failed to establish that the Code permitted an appeal where there was no response to a grievance. *Towns*, 346 F. App'x at 99-100. Likewise, in *Dole*, the court expressly stated that the applicable grievance regulations "were not clear about how to proceed once a timely grievance was lost." *Dole*, 428 F.3d at 811. Unlike in these cases, the grievance policy in place at MCF clearly permitted an appeal under the circumstances described by Mr. Daher. (*See* Defs.' Hearing Ex. A at 24.)

Mr. Daher also asserts that he did not know about the "deemed denied" provision in the grievance policy. (ECF 231 at 11.) However, an inmate's ignorance of the requirements of the grievance policy will not excuse his failure to comply, "so long as the prison has taken reasonable steps to inform the inmates about the required procedures." *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). It is clear from the record that Mr. Daher was quite familiar with the grievance policy as a general matter, given his use of it prior to the events underlying this case. (ECF 167-3 at 9-10.) It is also clear that he could have obtained a complete copy of the policy in a number of ways if he had any questions about its provisions. (ECF 102 at 16.) In fact, he admitted at the second *Pavey* hearing that the policy was available to him but he just never read the deemed-denied provision.[6] (ECF 232 at 27 (Question: "So you had access to the offender

---

[6] Among other places, copies of the policy were available in the prison law library, and the record reflects that Mr. Daher previously worked in the MCF law library as a clerk. (ECF 10 at 24, 25; ECF 102 at 58.)

12

grievance policy; you could have ready through it. You're just saying you were not familiar with that particular paragraph?" Answer: "That's correct.").)

Mr. Daher also surmises that he could not have obtained an appeal form even if he had requested one. (*See* ECF 231 at 11.) In other words, he believes there was no point in trying to obtain the form. However, there is no "futility" exception to the exhaustion requirement. *See Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999). "No one can *know* whether administrative requests will be futile; the only way to find out is to try." *Id.* Mr. Daher does not argue that he actually tried to obtain an appeal form; indeed, such an assertion would conflict with his sworn testimony at the hearing. (*See* ECF 232 at 26 (Question: "You made no attempt to appeal?" Answer: "I did not.").) His account was that he did not appeal because he was unaware of the "deemed denied" provision, which, as discussed above, did not excuse him exhausting.

He also points out that he was transferred to Wabash Valley Correctional Facility, although it is not clear that this occurred during the appeal period. One of his own exhibits reflects that he was transferred from MCF to Wabash Valley on February 9, 2012, which was months after he allegedly got no response to his September 2011 and November 2011 grievances.[7] (Pl.'s Hearing Ex. 9.) Moreover, even if he was transferred during the appeal period, there is nothing to suggest that he could not have requested an appeal form or submitted an appeal to prison staff at his new facility. Appeals were decided by a state-wide officer, so which facility the appeal came from would appear to

---

[7] The appeal period for an unanswered grievance would have started running 26 days after the grievance was filed and ended 10 working days thereafter. (*See* ECF 230 at 6.)

13

have little significance. (Defs.' Hearing Ex. A at 2, 13 (defining the "Department Offender Grievance Manager" as a staff person in Indiana Department of Correction's "Central Office" designated by the IDOC Commissioner to resolve grievance appeals). Mr. Daher admitted at the *Pavey* hearing that no one prevented him from reaching out to the grievance specialist at Wabash Valley to inquire about appealing a grievance filed at another facility—he just did not do so. (EF 232 at 91.) After his arrival at Wabash Valley, Mr. Daher used the grievance system to complain about other matters, including filing a grievance appeal. (*See* ECF 168-1 at 13-19; ECF 167-3 at 10; Pl.'s Hearing Ex. 9.) Indeed, even several years later he still remembered the name of the grievance specialist at that facility. (ECF 232 at 34.)

Mr. Daher also argues at length that the OGRE system is generally unreliable, presumably in an effort to bolster his own account of what occurred.[8] (ECF 231 at 5-14.) As already outlined, there were sufficient reasons for rejecting Mr. Daher's account as lacking in credibility. Furthermore, even if he is correct that the OGRE system was less than perfect, the fact that errors were made as to other inmates does not mean that Mr. Daher was prevented from exhausting his administrative remedies. Despite the voluminous discovery that was conducted following remand, he has not presented the

---

[8] He vigorously attacks the integrity of Ms. Beaver (ECF 231 at 5-6), but in addition to her testimony, the Defendants provided testimony from Ms. Heishman that there was no record of Mr. Daher having filed a grievance related to the matters raised in this lawsuit. (*See* ECF 102 at 35, 39.) Furthermore, there is no credibility determination required on the issue of whether Mr. Daher filed an appeal, as it is undisputed that he did not do so. (ECF 232 at 88-89.)

court with evidence of any misconduct by Defendants specific to this case.[9] An inmate is excused from complying with the grievance process only if it was made unavailable to him, such as through affirmative misconduct by prison staff, and there is no evidence to show that occurred here. *Kaba*, 458 F.3d at 684. It is also undisputed that Mr. Daher had a remedy available if his grievance and resubmitted grievance were ignored by prison staff as he claims: He could have pursued an appeal. (Defs.' Hearing Ex. A at 24.) It is clear from his own testimony that he did not take this step, and there is no evidence that anyone prevented him from doing so. (*See* ECF 232 at 88-89.)

He points to a document reflecting that Ms. Beaver once told another inmate "[y]ou may not appeal rejected grievances." (Pl.'s Hearing Ex. 20.) There is nothing to suggest this was inaccurate information, or that it was ever conveyed to Mr. Daher. But more importantly, Mr. Daher's account at the hearing was not that his grievances were rejected, but that he simply got no response to them. The grievance policy clearly allowed for an appeal under these circumstances, and there is nothing in the record to reflect that Ms. Beaver or anyone else told him otherwise.

---

[9] He points to another case he filed, *Daher v. Kasper*, 3:06-CV-92-RLM-CAN, wherein the district court noted problems with the defendants' evidence regarding exhaustion in an order denying summary judgment. *Id.*, ECF 41. In Mr. Daher's view, the court's order proves that "Defendants are not believable and truthful, and have a documented history of false and deceptive claims." (ECF 231 at 5.) The court finds Mr. Daher's prior case of limited relevance, as it involved different prison staff, a different grievance policy, and events occurring years before the events in this case. Additionally, the order he points to only determined that the matter of exhaustion was disputed; it did not determine that any defense witness had fabricated evidence or committed fraud, as he suggests. (*Id.*) Certainly it is not beyond the realm of possibility that prison staff could mishandle—or even fabricate—exhaustion records. But it was for the Magistrate Judge to determine in the first instance whether the defense witnesses and evidence were credible in this case, and he found the evidence credible. This court finds no basis in the record to disturb that determination.

He also claims that Ms. Tobin told him that "classification issues" were "not grievable," but this was an accurate summarization of the policy. (*See* Defs.' Hearing Ex. A at 6 (providing that "[c]lassification actions or decisions" are not grievable under the policy).) In fact, the record reflects that Mr. Daher separately pursued classification appeals regarding the higher security classification he was given as a result of these events. (ECF 10 at 19-25.) However, there was clear testimony at the second *Pavey* hearing that the actions of staff described by Mr. Daher, wherein they allegedly retaliated against him for filing grievances and lawsuits, was a grievable issue. (ECF 231 at 50, 73.) The grievance policy itself provides that an inmate can grieve "actions of individual staff," including, "[a]cts of reprisal for the good-faith use of, or participation in, the Offender Grievance Process," as well as "[a]ny other concerns relating to conditions of care or supervision within the Department[.]" (Defs.' Hearing Ex. A at 5.) To the extent Mr. Daher is trying to argue that Ms. Tobin's statement deterred him from using the grievance process, this argument is belied by his own testimony, which was that he submitted a grievance about the retaliatory transfer and substandard conditions in the segregation unit not once but twice.

For these reasons, Defendants have demonstrated that Mr. Daher did not exhaust his available administrative remedies before filing suit. Therefore, the case must be dismissed.

As a final matter, both sides requested sanctions in their post-hearing briefs, but as the Magistrate Judge observed, their requests do not comport with Federal Rule of Civil Procedure 11(c)(2), which requires such a request to be made by separate motion.

16

Even if proper procedures were followed, the court also agrees with the Magistrate Judge that sanctions are not warranted in this case. There is no evidence of wrongdoing by Defendants in this case warranting sanctions. As to Mr. Daher, the circumstances are somewhat suspicious regarding the Return of Grievance form, but there is no definitive proof that he fabricated evidence for use in this case. In the court's view, the interests of justice are best served simply by bringing this long-running case to a final conclusion.

III.     CONCLUSION

For these reasons, the plaintiff's objection (ECF 231) is OVERRULED. The Magistrate Judge's Report and Recommendation (ECF 230) is ADOPTED, and this case is DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

SO ORDERED on July 26, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT